# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| FTI CONSULTING, INC., as Trustee of the Centaur, LLC Litigation Trust, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 11 CV 7670 ) |
| MERIT MANAGEMENT GROUP, LP, | ) Judge Joan B. Gottschall ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION & ORDER

FTI Consulting, Inc., as trustee of the Centaur, LLC Litigation Trust, sued Merit Management, LP, in an attempt to avoid an allegedly fraudulent transfer of $16,503,850 to Merit. Merit has filed a motion to dismiss and a motion to transfer venue to the Bankruptcy Court for the District of Delaware. For the reasons explained below, both motions are denied.

## I. BACKGROUND

In 2002, a developer named Valley View Downs, LP, applied for Pennsylvania's last available harness-racing license. Valley View's goal was to obtain the racing license as well as a gaming license so that it could develop a race track with a casino, also known as a "racino." The Pennsylvania State Harness Racing Commission initially denied Valley View's application, but gave the company an opportunity to reapply.

To strengthen its chances at securing the racing license, Valley View decided to buy out another company that was competing with Valley View for the license—Bedford Downs Management Corporation. The two companies entered into a Settlement Agreement whereby Valley View agreed to pay Bedford Downs $55 million in exchange for Bedford Downs's

promise to withdraw its application for the racing license. As a 30.007% owner of Bedford Downs, Valley View paid Merit $16,503,850 at the closing of the deal.

With Bedford Downs out of the picture, the Racing Commission granted Valley View's application. To develop a "racino," however, Valley View still needed to secure a gaming license. Valley View applied for that license, but the Pennsylvania Gaming Control Board denied the application. Valley View never received the gaming license, and the company filed for bankruptcy in 2009.

The Valley View bankruptcy was administered by a bankruptcy judge in the District of Delaware. *See In re Centaur, LLC*, No. 10-10799 (KJC) (Bankr. D. Del. filed Mar. 6, 2010).[1] As part of the bankruptcy proceeding, the bankruptcy judge approved a "Second Modified Fourth Amended Joint Chapter 11 Plan of Reorganization" (the Plan). Under the Plan, FTI Consulting (the Trustee) was appointed to oversee the "Centaur, LLC Litigation Trust." As Trustee, FTI acquired Valley View's right, title and interest in certain "Designated Avoidance Actions," which FTI alleges include the claims asserted in this case.

The Trustee brought an avoidance action against Merit in this court, seeking to avoid Valley View's payment of $16,503,850 to Merit. Merit now moves to dismiss for lack of standing and to transfer venue to the Delaware Bankruptcy Court.

## II. LEGAL STANDARD

**A. Motion to Dismiss for Lack of Standing**

Motions to dismiss for lack of standing are considered under Federal Rule of Civil Procedure 12(b)(1) as an argument that the court lacks subject-matter jurisdiction. *See Am. Fed'n of Gov't Emps., Local 2119 v. Cohen*, 171 F.3d 460, 465 (7th Cir. 1999). When reviewing

---

[1] Centaur, LLC is the parent company of Valley View.

a motion to dismiss brought under Rule 12(b)(1), the court "must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). To determine subject-matter jurisdiction, the court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject[-]matter jurisdiction exists." *Id.* The burden of proof in a Rule 12(b)(1) motion is on the party asserting jurisdiction. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012).

**B. Motion to Transfer**

Under 28 U.S.C. § 1404(a), "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Similarly, under 28 U.S.C. § 1412, "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties."

"In determining whether a forum is more convenient, the court must consider the private interests of the parties as well as the public interest of the court." *Aldridge v. Forest River, Inc.*, 436 F. Supp. 2d 959, 960 (N.D. Ill. 2006). The factors related to the parties' private interests include: "(1) the plaintiff's choice of forum, (2) the situs of material events, (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties of litigating in the respective forums." *Hanley v. Omarc, Inc.*, 6 F. Supp. 2d 770, 774 (N.D. Ill. 1998).

"The 'interest of justice' is a separate component of a § 1404(a) transfer analysis . . . ." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th Cir. 1986). This inquiry is directed to the "efficient administration of the court system." *Id.* The court must consider "the transferor and transferee courts' familiarity with the applicable law and the effect of transfer on the efficient administration of justice." *Aldridge*, 436 F. Supp. 2d at 962.

### III. ANALYSIS

The court first considers the motion to dismiss and then addresses the motion to transfer venue.[2]

**A. Motion to Dismiss**[3]

Merit argues that the Trustee lacks standing to bring its claims against Merit because the Trustee's claims are not "Designated Avoidance Actions" under the Plan. Section 9.2(a) of the Plan provides that "the Debtors [including Valley View] shall be deemed to have automatically transferred to the Litigation Trust all of their right, title and interest in and to the Designated Avoidance Actions." (Mot. to Dismiss Ex. A (Plan) § 9.2(a), ECF No. 18-1.) The Plan defines "Designated Avoidance Actions" as "any Avoidance Actions that may be asserted against Entities or Persons other than Released Persons to avoid those certain transfers of property

---

[2] The court may consider a motion to dismiss for lack of subject-matter jurisdiction and a motion to transfer venue in any order. *See In re LimitNone, LLC*, 551 F.3d 572, 576 (7th Cir. 2008) ("[T]he district court was not required to determine its own subject-matter jurisdiction before ordering the case transferred. Although . . . the Supreme Court [has] mandated that issues of jurisdiction precede a determination of the merits, the Supreme Court has consistently held that 'there is no mandatory sequencing of jurisdictional issues.'" (quoting *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007))).

[3] The court previously referred this case to the Bankruptcy Court for the Northern District of Illinois for proposed findings of fact and conclusions of law on the motion to dismiss. The court hereby withdraws that reference. *See* 28 U.S.C. § 157(d) ("The district court may withdraw, in whole or in part, any case or proceeding referred [to the bankruptcy court], on its own motion or on timely motion of any part, for cause shown.").

4

described on Exhibit 'I' to the Disclosure Statement and to recover such transferred property." (Plan § 1.37.)[4]

Exhibit I to the Disclosure Statement, titled "Designated Avoidance Actions," lists nine transfers of property. (Mot. to Dismiss Ex. B (Disclosure Statement) Ex. I, ECF No. 18-2.) For each of these transfers, Exhibit I identifies the nature of the transfer, the transferor, the transferee, and the amount of transfer. The eighth transfer on Exhibit I is listed as "payment for equity interests (pursuant to Settlement Agreement)." (*Id.*) Valley View is listed as the transferor, and thirteen shareholders of Bedford Downs are listed as the transferees. (*Id.*) The amount of transfer is listed as $55,000,000. (*Id.*)

Merit argues that because Merit is not listed as a "transferee" on Exhibit I, the Trustee did not acquire Valley View's right to sue Merit, and thus lacks standing to bring this case against Merit. The court disagrees. The Plan does not restrict the definition of "Designated Avoidance Actions" to actions against the transferees identified on Exhibit I. Rather, the "Designated Avoidance Actions" include actions to "avoid those certain transfers of property *described* on Exhibit 'I' . . . ." (Plan § 1.37 (emphasis added).) There can be no dispute that the transfer of $16,503,850 from Valley View to Merit at issue is *described* on Exhibit I—the $16,503,850 was part of the $55,000,000 transferred from Valley View to Bedford Downs (30.007% of which is owned in part by Merit). That Merit was not identified as a transferee is irrelevant under the Plan's definition of Designated Avoidance Actions.

Moreover, the Plan specifically provides that certain "Designated Defendants" are not released from liability under the Plan. (Plan § 1.37.) The "Designated Defendants" include not

---

[4] The Plan defines "Avoidance Actions" as "all Causes of Action of the Estates that arise under chapter 5 of the Bankruptcy Code and any analogous Causes of Action arising under state law." (Plan § 1.6.)

5

only "any Entity identified on Exhibit 'I'" but also any Entity that "is or may be liable in connection with the Designated Avoidance Actions." (Plan § 1.38.) As the Trustee correctly points out, this provision "expressly contemplates and accounts for the possibility that entities may be liable in connection with the Designated Avoidance Actions that may not be listed on Exhibit 'I'." (ECF No. 22, at 7.)

The cases cited by Merit in support of its argument that the Trustee lacks standing are inapposite. In *Rahl v. Bande*, 328 B.R. 387 (S.D.N.Y. 2005), a Litigation Trust Agreement provided that the trustee was assigned the "right, title and interest to all claims for relief or causes of action 'against the Debtors' current or former directors and officers.'" *Id.* at 400. The court concluded that the language of the Agreement did not extend to causes of actions against third parties. *Id.* Here, by contrast, the Plan assigns the right to claims based on whether those claims involve certain *transactions*, not certain defendants. To the extent that the Plan refers to certain defendants at all, it does so only to clarify that entities such as Merit are *not* released under the Plan.

Similarly, in *Mukamal v. Bakes*, 383 B.R. 798 (S.D. Fla. 2007), the trustee was authorized to litigate "Creditor D&O Claims," defined as "any claims Creditors may have against Debtors or their current or former directors and officers as well as the proceeds of such Claims." *Id.* at 810. The court concluded that the trustee lacked standing to sue the debtors' accountants because they were not "current or former directors and officers" of the debtors. *Id.* But again, the Plan here does not limit "Designated Avoidance Actions" to actions against specific defendants, and so *Mukamal* is irrelevant.

Because the Trustee's action seeks to avoid a transfer of property described on Exhibit I, it is a "Designated Avoidance Action" under the Plan. Section 9.2(a) of the Plan vests the

6

Trustee with the "right, title, and interest in and to" such actions. Accordingly, the Trustee has standing to pursue its claims against Merit.

**B. Motion to Transfer Venue**

Merit offers several reasons why it believes that the "private interest" factors support transferring this case to the Delaware Bankruptcy Court. As noted above, these factors include (1) the plaintiff's choice of forum, (2) the situs of material events, (3) the relative ease of access to sources of proof, (4) the convenience of the witnesses, and (5) the convenience to the parties of litigating in the respective forums. *Hanley*, 6 F. Supp. 2d at 774.

Merit argues that "[n]umerous potential witnesses, including representatives of [Valley View] and its financial advisors, Bedford [Downs's] shareholders[,] and the escrow agent that facilitated the Settlement Agreement, are located in Pennsylvania, and travel to Delaware from Pennsylvania will be significantly easier for such witnesses in terms of time, distance, and cost." (ECF No. 32, at 8.) It notes that Centaur, the parent company of Valley View, is a Delaware corporation. (*Id.*) Finally, it contends that "[t]o the extent compulsory process is necessary, it is much more likely that the Delaware Bankruptcy Court can provide such process considering its proximity to Pennsylvania." (*Id.*)

The Trustee counters that Delaware would be no more convenient a forum, as the Trustee "is in possession of a significant amount of the relevant documents . . . , and any additional relevant evidence can be accessed through third-party subpoenas with little to no difficulty." (ECF No. 35, at 8.) The Trustee argues that the Seventh Circuit "has a considerable connection to the transfers at issue in this case," as Merit has its principal place of business in Illinois, and Valley View was based in Indiana at the time of the allegedly fraudulent transfer. (*Id.*) Moreover, the Trustee notes that it chose to prosecute its claims in the Northern District of

7

Illinois, and "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).

The court concludes that the private interest factors as a whole favor the Trustee. Most of the specific factors do not support either party. Neither Delaware nor Illinois has a strong connection to the material events in this case, which occurred in Pennsylvania. The witnesses and parties are located across the country, and neither side has made a convincing argument that it would be more convenient to travel to one forum as opposed to the other. But the fact that the plaintiff chose the Northern District of Illinois as its forum is significant, and because the other factors are inconclusive, the private interest factors as a whole favor the Trustee.

Merit next argues that the "public interest" factors, which include the court's familiarity with applicable law and the effect of transfer on the efficient administration of justice, favor a transfer for four reasons: (1) the Delaware Bankruptcy Court is already familiar with the facts of this case and the underlying bankruptcy; (2) there is a risk of inconsistent results if the motion to transfer is denied; (3) the Trustee has engaged in forum shopping; and (4) under the Plan, the Delaware Bankruptcy Court has exclusive jurisdiction to adjudicate any Designated Avoidance Action transferred to the Trustee. The court finds none of these reasons to be persuasive.

First, although it is true that the judge in the Delaware bankruptcy proceeding was familiar with the facts of the underlying bankruptcy case while he was presiding over it, that case was closed on March 15, 2013. The Plan was confirmed on February 18, 2011. It is thus unlikely that the Delaware Bankruptcy Court's familiarity with the facts of the underlying bankruptcy case would significantly expedite the resolution of this case, especially as this court is also already familiar with the facts of this case.

8

Second, Merit's concern that denying the motion to transfer could lead to inconsistent results is speculative. It is true that another case, which originated in Florida and involved similar defendants, is currently pending in the Delaware Bankruptcy Court. And the parties appear to agree that under Third Circuit law, § 546(e) of the Bankruptcy Code would effectively bar the Trustee's claims against Merit and the defendants in the Florida case.[5] But the plaintiff in the Florida case has filed a motion to re-transfer the case back to Florida, and that motion is currently pending in the Delaware Bankruptcy Court. If the Delaware Bankruptcy Court grants the motion, there would be less risk of inconsistent results, as the law in the Eleventh Circuit is more favorable to the Trustee. Additionally, this case is still at an early stage, and Merit may still prevail for a variety of reasons. In short, it is far from clear that denying the motion to transfer would lead to inconsistent results, and such a speculative concern should not trump the Trustee's choice of forum.

Third, the fact that the Trustee has filed this lawsuit in a district with favorable law is not a reason to transfer venue. "Unlike defendant forum shopping, plaintiff forum shopping is not an evil to be avoided, but rather is an inherent part of our federal court network. A plaintiff may have available numerous places of equal convenience to bring his or her suit, and has every right to file in the forum that is most geographically convenient or that has the most favorable law." *United States v. Cinemark USA, Inc.*, 66 F. Supp. 2d 881, 889 (N.D. Ohio 1999) (internal quotation marks omitted).

---

[5] Section 546(e) of the Bankruptcy Code provides, in pertinent part, "[T]he trustee may not avoid a transfer that is a . . . settlement payment, as defined in section 101 or 741 of this title, made by or to (or for the benefit of) a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency . . . ." 11 U.S.C. § 546(e).

Fourth, with respect to Merit's argument that, under the Plan, the Delaware Bankruptcy Court has exclusive jurisdiction to adjudicate the Designated Avoidance Actions, "it is well settled that[] a Plan may not delegate unlimited authority to a bankruptcy judge . . . ." *Kalamazoo Realty Venture Ltd. P'ship v. Blockbuster Entm't Corp.*, 249 B.R. 879, 886 (N.D. Ill. 2000) (internal quotation marks omitted). "A reorganization court will frequently insert a clause in a plan that reserves jurisdiction to protect the confirmation decree." *Id.* (internal quotation marks omitted). But "when a bankruptcy court retains jurisdiction over a certain dispute, it does not divest any other court of concurrent jurisdiction." *Id.* (internal quotation marks omitted).

Moreover, "several courts have opined that a bankruptcy court's attempt to retain jurisdiction beyond that which is necessary to effectuate the plan of reorganization is beyond the authority of that court[] and that a boilerplate retention of jurisdiction clause inserted into a plan cannot expand that court's authority." *Unico Holdings, Inc. v. Nutramax Products, Inc.*, 264 B.R. 779, 785 (Bankr. S.D. Fla. 2001) (collecting cases). Thus, in *Unico*, the court denied defendant's motion to transfer venue to the Delaware Bankruptcy Court, notwithstanding that the plan of reorganization contained an exclusive-jurisdiction provision that purported to cover the plaintiff's claims. *Id.*

Here, as in *Unico*, the court finds that the exclusive-jurisdiction provision does not require this case to be transferred to the Delaware Bankruptcy Court. To give the provision the effect urged by Merit would be to transform a boilerplate provision aimed at "protect[ing] the confirmation decree," *Kalamazoo*, 249 B.R. at 886, into a pivotal term dramatically affecting the scope of the creditors' right to recovery. It would significantly undermine the purpose of the Litigation Trust. The parties could not have intended the provision to have such an effect.

Thus, the court concludes that none of the "public interest" factors support transferring venue to the Delaware Bankruptcy Court. Because neither the "public interest" nor the "private interest" factors support transferring this case, Merit's motion is denied.

## IV. Conclusion

For the foregoing reasons, Merit's motion to dismiss and its motion to transfer venue are both denied. The reference to the bankruptcy court is withdrawn. A status hearing is set for September 5, 2014, at 9:30 a.m.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: August 5, 2014