# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| FTI CONSULTING, INC., Trustee of the Centaur, LLC Litigation Trust, | ) ) | |
| Plaintiff, | ) ) | Case No. 11 C 7670 |
| v. | ) ) | Judge Joan B. Gottschall |
| MERIT MANAGEMENT GROUP, LP., Defendant. | ) ) ) | |

## MEMORANDUM OPINION AND ORDER

FTI Consulting, Inc., as Trustee of the Centaur, LLC Litigation Trust, sued Merit Management Group, LP, in an attempt to avoid an allegedly fraudulent transfer of $16,503,850 to Merit. Merit's motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is before the court. For the following reasons, the motion is granted.

## I. BACKGROUND

The essential facts in this case are undisputed. This case arises out of efforts by an entity named Valley View Downs to develop a "racino" (a race track with a casino, which requires both racing and gaming licenses) in Pennsylvania. In 2002, Valley View and Bedford Downs Management Corporation both applied for Pennsylvania's last available harness-racing license. The Pennsylvania State Harness Racing Commission initially denied their applications, but after litigation in Pennsylvania state court, the Commission allowed Valley View and Bedford Downs to reapply.

To strengthen its chances at securing the racing license, Valley View decided to buy out the competition. Thus, Valley View, Bedford Downs, and others entered into a settlement agreement dated August 14, 2007 (the "Settlement Agreement"). (Dkt. 60-2 through 60-7.) The Settlement Agreement required Valley View to pay Bedford Downs $55 million in exchange for

all of Bedford Downs's stock.  On September 4, the parties to the Settlement Agreement entered into an escrow agreement (the "Escrow Agreement" or, collectively with the Settlement Agreement, the "Securities Contracts").  (Dkt. 60-8.)

Because Merit was a 30.007% owner of Bedford Downs, Valley View ultimately transferred $16,503,850 to it (the "Transfers").  Valley View's financial arrangements relating to the Transfers were complex and involved multiple entities.  As is relevant here, Valley View made the Transfers through Credit Suisse and Citizens Bank of Pennsylvania ("Citizens Bank").  Credit Suisse acted as an escrow agent on behalf of Valley View and distributed the funds pursuant to the terms of (1) certain credit agreements between Valley View and Credit Suisse and (2) the Escrow Agreement.  Citizens Bank held the Transfers in escrow pursuant to the terms of the Escrow Agreement until the transaction closed and then distributed the funds to Merit.

With Bedford Downs out of the running, the Racing Commission granted Valley View's application for a harness-racing license.  Valley View's desire to open a "racino," however, faltered at the gate as Valley View was unable to secure a gaming license.  Without the gaming license, Valley View could not go the distance and thus sought relief under Chapter 11 of the Bankruptcy Code.

The bankruptcy court ultimately confirmed Valley View's Chapter 11 plan.  The Centaur, LLC Litigation Trust was created pursuant to the confirmed plan, and FTI Consulting, Inc. was selected to serve as the Litigation Trustee.  The confirmed plan contemplated that the Trustee would pursue certain claims – the "Designated Avoidance Actions" – to benefit certain creditors of Valley View.  After convoluted proceedings before multiple bankruptcy courts, the flag is raised to determine Merit's motion for judgment on the pleadings, which is based on Merit's

contention that § 546(e) of the Bankruptcy Code bars the Trustee's attempt to avoid the Transfers pursuant to the Bankruptcy Code.[1]

## II. LEGAL STANDARD

In ruling on a motion for judgment on the pleadings pursuant to Rule 12(c), when the movant seeks "to dispose of the case on the basis of the underlying substantive merits . . . . the appropriate standard is that applicable to summary judgment, except that the court may consider only the contents of the pleadings." *Alexander v. City of Chi.*, 994 F.2d 333, 336 (7th Cir. 1993). The pleadings include the complaint, the answer, and any documents attached as exhibits, such as affidavits, letters, and contracts. *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452-53 (7th Cir. 1998). The court may also take judicial notice of "documents that are critical to the complaint and referred to in it." *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The court should grant a Rule 12(c) motion for judgment on the pleadings only if "no genuine issues of material fact remain to be resolved" and the movant "is entitled to judgment as a matter of law." *Alexander*, 994 F.2d at 336.

Merit has provided the court with documents relating to the sale of Bedford Downs' shares to Valley View, including transactional documents showing the conduits through which

---

[1] The Trustee's complaint appears to seek relief under state fraudulent transfer law. For example, Count II is entitled "avoidance of fraudulent transfer (11 U.S.C. § 544 & Pennsylvania Uniform Transfer Act § 5105." (Compl., Dkt. 1.) In that count, the Trustee alleges that the Transfers are "avoidable under Pennsylvania law by actual creditors holding allowable unsecured claims against Valley View Downs." (*Id.* ¶ 55.) Nevertheless, in its opposition to the motion for judgment on the pleadings, the Trustee states that it "has not asserted any state law claims on behalf of creditors, but rather debtor claims under § 544." (Trustee Resp., Dkt. 65, at 1.) Based on this position, the Trustee did not address Merit's arguments about preemption of any state law claim. Given the Trustee's abandonment of any state law claims, the court considers them withdrawn and thus will not address preemption.

the transaction was made. Merit contends that these documents are properly before the court as the Trustee's complaint repeatedly refers to the transaction. (Merit's Memo., Dkt. 60, at 5, n.3.) The Trustee disagrees but does not dispute that certain documents relating to the transaction (discussed above) are admissible and relevant. Given that no party objects to the court's consideration of these documents, the court will do so.

### III.  DISCUSSION

"The Bankruptcy Code allows a trustee to avoid and recover pre-petition fraudulent and preference transfers made by a debtor." *In re MCK Millennium Ctr. Parking, LLC*, 532 B.R. 716, 726-27 (Bankr. N.D. Ill. 2015). Section 546(e) of the Bankruptcy Code, however, provides a "safe harbor" by barring a trustee from avoiding certain transfers. 11 U.S.C. § 546(e). The "safe harbor" protects, among other transfers:

- "a transfer that is a . . . settlement payment . . . made by or to (or for the benefit of) a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency, or

- a transfer made by or to (or for the benefit of) a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency, in connection with a securities contract . . . .

11 U.S.C. § 546(e).[2]

---

[2] 11 U.S.C. § 546(e) provides in full that:

Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not avoid a transfer that is a margin payment, as defined in section 101, 741, or 761 of this title, or settlement payment, as defined in section 101 or 741 of this title, made by or to (or for the benefit of) a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency, or that is a transfer made by or to (or for the benefit of) a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency, in connection with a securities contract, as defined in section 741(7), commodity contract, as defined

The Trustee does not dispute that the Transfers were "settlement payments" or that they were made "in connection with a securities contract." (Trustee Resp., Dkt. 65, at 1.) Commercial banks such as Credit Suisse and Citizens Bank are financial institutions. *See In re MCK Millennium Ctr. Parking, LLC*, 532 B.R. 716, 727 (Bankr. N.D. Ill. 2015) (citing 11 U.S.C § 101(22)(A)). Thus, the applicability of § 546(e) in this case turns on the meaning of the phrase "by or to (or for the benefit of) . . . a financial institution."

Merit (the recipient of the Transfers that the Trustee seeks to avoid) argues that the Transfers were made "by or to" a financial institution (here, Credit Suisse and Citizens Bank) because financial institutions transferred and received funds in connection with the Transfers. In contrast, the Trustee asserts that § 546(e)'s requirement that a transfer be "by or to" a financial institution applies only to a financial institution that is (1) a debtor-transferor; (2) a transferee that is not a mere conduit; or (3) an entity on whose behalf the transfer was made. The Trustee contends that the financial institutions had no beneficial interest in the funds; Valley View was the debtor-transferor and the entity on whose behalf transfer was made, Merit was the transferee, and neither Valley View nor Merit is "a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency." Thus, the Trustee concludes that § 546(e)'s "safe harbor" does not shield the Transfers.

**A.      Guidance From The Seventh Circuit**

The circuits are split on the issue presented in this case. The Seventh Circuit has not weighed in on § 546(e)'s requirement that a transaction be "by or to (or for the benefit of) . . . a

---

in section 761(4), or forward contract, that is made before the commencement of the case, except under section 548(a)(1)(A) of this title.

financial institution" but has construed other language in § 546(e).  It has held that "Congress enacted § 546(e) to ensure that honest investors will not be liable if it turns out that a leveraged buyout (LBO) or other standard business transaction technically rendered a firm insolvent." *Peterson v. Somers Dublin Ltd.*, 729 F.3d 741, 748 (7th Cir. 2013).  As the Seventh Circuit has explained, without § 546(e):

> one firm's bankruptcy could cause a domino effect as its clients could similarly default on their obligations, which in turn would trigger further bankruptcies, and so on.  By preventing one large bankruptcy from rippling through the securities industry in this way, the § 546(e) safe harbor protects the market from systemic risk and allows parties in the securities industry to enter into transactions with greater confidence.

*Grede v. FCStone, LLC*, 746 F.3d 244, 252 (7th Cir. 2014).

In interpreting § 546(e), the Seventh Circuit has followed what it views as the statute's plain language; "[t]he text is what it is and must be applied whether or not the result seems equitable."  *Peterson*, 729 F.3d at 748 (citing *Freeman v. Quicken Loans, Inc.*, — U.S. —, 132 S.Ct. 2034, 2044 (2012)); *Grede*, 746 F.3d at 253.  The Seventh Circuit has emphasized that this reliance on the statutory language does not mean that it has "appl[ied] a wooden textualism to the issue."  *Grede*, 746 F.3d at 253.  Instead, it has declined "to depart from the deliberately broad text of § 546(e)" because:

> [s]ection 546(e) applies only to the securities sector of the economy, where large amounts of money must change hands very quickly to settle transactions.  Those dealing in securities have an interest in knowing that a deal, once completed, is indeed final so that they need not routinely hold reserves to cover the possibility of unwinding the deal if a counter-party files for bankruptcy in the next 90 days.

>     Also, even a short term lack of liquidity can prove fatal to a commodity broker or other securities business.

*Id*.

With these precepts in mind, the court turns to decisions from other circuits, a decision by a bankruptcy judge in this district, and decisions of other district courts that address the meaning of the phrase "by or to (or for the benefit of) . . . a financial institution."

**B.      The Minority Position**

The court begins with the Eleventh Circuit's decision in *Matter of Munford, Inc.*, 98 F.3d 604, 610 (11th Cir. 1996). In that case, the Eleventh Circuit considered whether § 546(e) protected payments made to selling shareholders in connection with a leveraged buyout when the financial institutions involved in the transactions did not have a beneficial interest in the payments. A divided panel of the Eleventh Circuit held that § 546(e) is inapplicable if a financial institution involved in a transaction is a "intermediary or conduit" because a trustee may only avoid a transfer to a "transferee" that is a protected entity listed in § 546(e) and has a beneficial interest in the assets at issue.[3] *Id*. (citing 11 U.S.C. § 550, which addresses a transferee's liability for an avoided transfer). The dissenting judge in *Munford*, however, stated that the requirement that a financial institution have a beneficial interest in a settlement payment "created a new exception to [the] application [of § 546(e)]." *Id*. (Hatchett, C.J., dissenting in part).

---

[3] Presumably, Credit Suisse and Citizens Bank, the banks involved in the transactions at issue in this case, are for-profit entities. The parties have not addressed whether a bank that obtains a financial benefit due to, for example, float, has a beneficial interest in that transaction that is sufficient to invoke § 546(e). The court will not consider this issue further as it is unremarked by the parties, but notes that it is unclear if Credit Suisse and Citizens Bank in fact obtained no benefit from their roles in transactions totaling millions of dollars.

## C. The Majority Position

Numerous courts have rejected the *Munford* majority's interpretation of "by or to (or for the benefit of) . . . a financial institution" and have held that a financial intermediary involved in a transaction implicates the safe harbor protection in § 546(e) even if it acts as an intermediary or conduit. Specifically:

- **Second Circuit**

    *Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d 329, 338-39 (2d Cir. 2011) — Enron argued that a financial intermediary that acted as a record keeper and conduit was outside the scope of § 546(e) because it did not take title to the securities at issue during the transaction. Enron thus reasoned that the transaction "did not implicate the systemic risks that motivated Congress's enactment of the safe harbor." The Second Circuit disagreed, holding that § 546(e)'s safe harbor was available because "undoing Enron's redemption payments, which involved over a billion dollars and approximately two hundred noteholders," would have "a substantial and similarly negative effect on the financial markets." *Id*. at 338. The Second Circuit also held that a financial intermediary that does not take title to securities during a transaction is entitled to safe harbor protection. *Id*. at 339.

    *In re Quebecor World (USA) Inc.*, 719 F.3d 94, 99-100 (2d Cir. 2013) — In *Quebecor*, the Second Circuit reaffirmed *Enron*'s holding that a financial intermediary need not have a beneficial interest in a transfer to be protected by § 546(e). It focused on the statute's plain language and held that to prevent portions of the statute from becoming superfluous, "a transfer may be either 'for the benefit of' a financial institution or 'to' a financial institution, but need not be both." *Id*. It also found that this construction furthered the purpose behind § 546(e)'s safe harbor because transactions involving financial intermediaries acting as a conduits necessarily involve at-risk markets. *Id*. at 100. Finally, it stated that the protected entities listed in § 546(e) typically facilitate transfers. For this reason, "[a] clear safe harbor for transactions made through these financial intermediaries promotes stability in their respective markets and ensures that otherwise avoidable transfers are made out in the open, reducing the risk that they were made to defraud creditors." *Id*.

- **Third Circuit**

    *In re Resorts Int'l, Inc.*, 181 F.3d 505, 515 (3d Cir. 1999) — In *Resorts*, Merrill Lynch, a broker, and Chase Manhattan, a bank, were involved in a securities

transaction. The Third Circuit held that Merrill Lynch and Chase were "financial institutions" that were within the ambit of § 546(e) "[u]nder a literal reading of [that statute]." *Id*. The Third Circuit held that the dissent in *Munford* was more persuasive that the majority opinion because § 546(e) does not specify that the safe harbor is available only when the financial institution has a "beneficial ownership" in the funds at issue. *Id*. at 516.

*In re Plassein Int'l Corp.*, 590 F.3d 252, 257 (3d Cir. 2009) — In *Plassein*, the Third Circuit again rejected *Munford*, reaffirmed *Resorts*, and held that a bank that acts as a conduit is protected by § 546(e)'s safe harbor.

- **Sixth Circuit**

    *In re QSI Holdings, Inc.*, 571 F.3d 545, 550 (6th Cir. 2009) — In *QSI Holdings*, the plaintiffs argued that a transaction was not "made by or to a . . . financial institution" because the bank "never had dominion or control over [the] funds." The Sixth Circuit adopted *Resorts*' rejection of *Munford* and held that § 546(e) protects financial institutions that do not have a beneficial interest in the funds at issue.

- **Eighth Circuit**

    *Contemporary Indus. Corp. v. Frost*, 564 F.3d 981 (8th Cir. 2009) — In *Contemporary Industries*, the Eighth Circuit acknowledged *Munford* but adopted the Third Circuit's reasoning in *Resorts* and held that "the holding in *Munford* cannot be squared with § 546(e)'s plain language." *Id*. at 987. The Eighth Circuit based this conclusion on, among other things, "a literal reading of the relevant statutory language" and the fact that a bank was involved in the transaction. *Id*. The Eighth Circuit also noted that the statutory language "plainly and unambiguously encompasse[d]" the payments at issue. *Id*. Finally, the Eighth Circuit rejected the plaintiff's contention that reversing the payments at issue would not impact the stability of the financial markets and that following the Third Circuit's approach would lead to an absurd result. *Id*. at 987-88. In support, the Eighth Circuit explained that it could "see how Congress might have believed undoing" a transaction involving $26.5 million would affect the financial markets and "why Congress might have thought it prudent to extend protection to payments such as these." *Id*. Thus, the Eighth Circuit found that the payments at issue were shielded by § 546(e)'s safe harbor.

- **Tenth Circuit**

    *In re Kaiser Steel Corp.*, 952 F.2d 1230 (10th Cir. 1991) — In *Kaiser Steel*, the party challenging the application of § 546(e)'s safe harbor for financial institutions argued that § 546(e) did not protect settlement payments "by a

stockbroker, financial institution, or clearing agency, unless that payment is to another participant in the clearance and settlement system," as opposed to shareholders who are not protected parties. *Id.* at 1240. The Tenth Circuit held that the statutory language clearly and unambiguously exempted payments made "by or to" a protected party and that this interpretation was neither absurd nor otherwise unreasonable. *Id.* at 1240-41. It also declined to "replace the unambiguous language of the provision with clues garnered from the legislative history" stating that '[c]ertainly, we cannot say that the clear application is absurd, given the fact that disruption in the securities industry — an inevitable result if leveraged buyouts can freely be unwound years after they occurred — is also a harm the statute was designed to avoid." *Id.* at 1241.

**D.     District and Bankruptcy Court Decisions**

Most district and bankruptcy court decisions interpreting "made by or to a . . . financial institution" are in accord with the majority position and disagree with the Eleventh Circuit's decision in *Munford*. *See In re D.E.I. Sys., Inc.*, 996 F. Supp. 2d 1142, 1146 (D. Utah 2014) (following the Tenth Circuit's decision in *Kaiser Steel* and concluding that "'by or to' means just that — payments made either by or to a financial institution. The understanding and application of the phrase does not generally require careful parsing or close semantic scrutiny."); *In re Refco, Inc. Sec. Litig.*, No. 07 MDL 1902 GEL, 2009 WL 7242548, at *8 (S.D.N.Y. Nov. 13, 2009), report and recommendation adopted by 2010 WL 5129072 (S.D.N.Y. Jan. 12, 2010) ("The predominant view in the Circuits — that 'financial institution' means what it says and covers financial institutions even when they act only as a conduit for a settlement payment — is cogent and persuasive."); *In re Hechinger Inv. Co. of Delaware*, 274 B.R. 71, 87 (Bankr. D. Del. 2002) (disagreeing with *Munford* and following binding authority in *Resorts International* holding that the plain language of § 546(e) "does not require the financial institution to acquire a beneficial interest; rather, it broadly protects from trustee's avoidance powers settlement payments made "by . . . a financial institution").

A bankruptcy court in this circuit has considered the precise issue before this court — whether a financial institution that serves as a conduit or intermediary is entitled to safe harbor protection. *MCK Millennium Ctr. Parking*, 532 B.R. at 728. In *MCK Millennium*, the court recognized the circuit split and held that the majority position was "the better view" because § 546(e) does not contain "the additional requirement that the financial institution receive some financial benefit or acquire the funds for its own use." *Id*. It then "[applied] the text as written" and concluded that § 546(e)'s safe harbor applied to a $5M transaction where the funds were transferred to a financial institution which then transferred the funds to a trust. *Id*.

Finally, a bankruptcy decision from Massachusetts issued shortly before the Eleventh Circuit's decision in *Munford* supports the minority view. *In re Healthco Int'l, Inc.*, 195 B.R. 971, 982 (Bankr. D. Mass. 1996). This decision is consistent with *Munford*.

E.    **The Trustee's Arguments**

First, the Trustee contends that the court must consider the language in § 546(e) "within the context of both its purpose and Chapter 5 of the Bankruptcy Code."[4] (Trustee Resp., Dkt. 65, at 4.) It then argues that the legislative history shows that the safe harbor does not protect a financial institution unless unraveling the transaction would expose the securities market to systemic risk. (*Id*. at 4-7.) It also contends that the legislative history shows that Congress meant to protect participants in the commodities and securities markets, not other potential fraudulent transfer defendants, such as financial institutions that facilitate transactions. (*Id*. at 11-12.)

---

[4] "Chapter 5 of the Bankruptcy Code gives trustees certain avoidance powers and enables them to recover assets for the benefit of creditors." *In re Bilis*, No. 12 B 39161, 2014 WL 3697541, at *7 (Bankr. N.D. Ill. July 22, 2014).

-11-

These arguments are at odds with the Seventh Circuit's teaching that unambiguous statutory language is controlling. The Transfers here were "by or to" a financial institution because two financial institutions transferred or received funds in connection with a "settlement payment" or "securities contract." *See Kaiser Steel*, 952 F.2d at 1240-41; *Resorts Int'l.*, 181 F.3d at 515; *Enron Creditors Recovery Corp.*, 651 F.3d at 338-39; *Contemporary Indus.*, 564 F.3d at 987-88; *QSI Holdings*, 571 F.3d at 550; *Plassein Int'l*, 590 F.3d at 257; *Quebecor World*, 719 F.3d at 99-100; *see also MCK Millennium Ctr. Parking*, 532 B.R. at 728*; D.E.I. Sys., Inc.*, 996 F. Supp. 2d at 1146; *Refco, Inc. Sec. Litig.*, 2009 WL 7242548, at *8; *Hechinger Inv. Co.*, 274 B.R. at 87.

The Seventh Circuit's observation, when parsing a different clause in § 546(e), that "a court can't say 'this statute is ambiguous, so we will implement the legislative history unencumbered by enacted text'" is apropos. *Peterson*, 729 F.3d at 748 (citing *Freeman v. Quicken Loans, Inc.*, — U.S. —, 132 S.Ct. 2034, 2044 (2012)). Legislative history can be helpful when interpreting ambiguous language, but should be "used to decipher the ambiguous language, not to replace it." *Id.*; *see also Grede*, 746 F.3d at 253 (describing the district court's reliance on policy grounds when interpreting § 546(e) as "powerful and equitable" but reversing because the district court's "reasoning runs directly contrary to the broad language of § 546(e)"). The court agrees that the clear statutory text is unambiguous and, therefore, must control. Thus, it rejects the Trustee's policy arguments.

Second, the Trustee contends that Chapter 5 of the Bankruptcy Code "gives trustees the right to avoid pre-petition transfers made by a debtor to a transferee or an entity for whose benefit such transfer was made." (Trustee Resp., Dkt. 65, at 10.) The Trustee argues that

Chapter 5's purpose supports its own purportedly plain language reading of "by, to, and for the benefit of": that § 546(e) only protects "(i) the debtor–transferor, (ii) a transferee, or (iii) an entity for whose benefit the transfer was made." (*Id*. at 8.) The Trustee asserts that any other reading of "by or to" would render the words "commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency" in § 546(e) superfluous because "it is difficult to imagine circumstances where a 'settlement payment' or 'a transfer in connection with a securities contract' does not somehow involve . . . the debtor's or tranferee's bank." (*Id*. at 10.) The Trustee concludes that "if Congress wanted to protect all settlement payments and transfers made in connection with a securities contract from avoidance (which it did not), it would have been unnecessary to specifically identify" entities covered by § 546(e.) (*Id*.)

This court finds the Trustee's suggested "plain meaning" strained. At the risk of being obvious, a transfer that is "by or to" a financial institution is just that: a transfer where a financial institution sends or receives funds. The court will not repeat its summary of the majority position cases above regarding "by or to" but finds them sensible and, more to the point, solidly grounded in the statutory language. Even if the court agreed with the Trustee's reading of "by or to" (which is not the case), the court cannot use its own assessment of Congressional intention to rewrite the words in § 546(e). *See Peterson*, 729 F.3d at 748; *Grede*, 746 F.3d at 253.

Third, the Trustee approaches the statutory issue from a different angle, focusing on the word "transfer" in § 546(e). 11 U.S.C. § 546(e) ("the trustee may not avoid a transfer that is a

. . . settlement payment . . . made by or to (or for the benefit of) a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency . . . "). The Trustee posits that the financial institutions here cannot have engaged in covered transfers because they are not "transferees" or "transferors" as those terms are used in the Bankruptcy Code since they lacked an interest in the funds. *See Munford*, 98 F.3d at 610-11; *Heathco Int'l*, 195 B.R. at 981-82.

The word "transfer" in the context of § 546(e) appears to refer to the movement of assets. *See Grede*, 746 F.3d at 246 (stating that "[t]hese appeals focus on two transfers of assets" that the trustee is seeking to avoid under § 546(e)). Moreover, the Seventh Circuit has held that § 546(e) reflects Congress' decision to favor" finality over equity for most pre-petition transfers in the securities industry – *i.e.*, those not involving actual fraud." *Grede*, 746 F.3d at 253. Section 546(e) thus "reflects a policy judgment by Congress that allowing some otherwise avoidable pre-petition transfers in the securities industry to stand would probably be a lesser evil than the uncertainty and potential lack of liquidity that would be caused by putting every recipient of settlement payments in the past 90 days at risk of having its transactions unwound in bankruptcy court." *Id*. at 254. The court adheres to the Seventh Circuit's use of "transfer" as a verb, as opposed to the Trustee's reading, which saddles § 546(e) with a pecuniary interest requirement. *See id*.

Finally, the Trustee argues that the circuit split is "largely" based on the majority courts' rejection of unnecessary dicta in *Munford* rather than an in-depth analysis of § 546(e)'s language. (Trustee Resp., Dkt. 65, at 13.) According to the Trustee, courts that espouse the minority position (*Munford* and *Heathco Int'l*) based their decision on a finding that § 546(e) did

not bar an avoidance action because "[a]lthough financial intermediaries were necessarily involved in the transaction[s], . . . the transfers were made "by [the debtor] to shareholders." (*Id.* at 14.) The Trustee contends that the minority courts' additional statement that the entities seeking the safe harbor were not "transferees" or "transferors" because they had no beneficial interest in the transferred funds was dicta that caused the circuit split. (*Id.*)

This argument is a non-starter. The majority position relies on, among other things, a plain language reading of § 546(e) (with which the court agrees) and sides with the *Munford* dissent. The Trustee's view that the majority position fails to take a "holistic" view of § 546(e) is simply another iteration of its legislative history arguments, which rely on the Trustee's interpretation of congressional intent rather than the statutory language.

In sum, Merit is entitled to § 546(e)'s safe harbor. This means that the Trustee cannot avoid the Transfers. Merit's motion for judgment on the pleadings is, therefore, granted.

## IV. CONCLUSION

For the above reasons, Merit's motion for judgment on the pleadings [58] is granted. The clerk is directed to enter final judgment accordingly.


Date:   October 2, 2015

                                              Joan B. Gottschall
                                              United States District Judge